329 So.2d 211 (1976)
Curtis POCHE, Jr., and Velma Poche
v.
AVONDALE SHIPYARDS, INC.
No. 7222 (Consolidated with No. 7450).
Court of Appeal of Louisiana, Fourth Circuit.
March 16, 1976.
Rehearing Denied April 13, 1976.
Writ Granted May 11, 1976.
*212 Kronlage, Dittmann & Caswell, Charles A. Kronlage, Jr., New Orleans, for plaintiffs-appellants.
Hammett, Leake, Hammett, Hayne & Hulse, Dominic J. Gianna, Donald A. Hammett, New Orleans, for defendants-appellees.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, Stewart E. Niles, Jr., for Avondale Shipyards, Inc., intervenor-appellee.
Montgomery, Barnett, Brown & Read, Wood Brown, III, New Orleans, for Employers Mut. Liability Ins. Co. of Wisconsin, amicus curiae.
Before SAMUEL, STOULIG and BOUTALL, JJ.
*213 STOULIG, Judge.
Plaintiffs,[1] the widow and children of Curtis Poche, Sr., filed this third party negligence action against Avondale Shipyards, Inc., Poche's employer, and its executive officers,[2] for the wrongful death of their husband and father, respectively. Poche fell from a scaffold while working on new ship construction during the course and scope of his employment with Avondale. The section of ship to which his scaffold was attached suddenly broke away from the rest of the structure and collapsed, causing Poche to be thrown violently to a rail below which fall ultimately resulted in his death.
Avondale filed exceptions of no right or cause of action without explaining the bases. The executive officers urged similar exceptions, alleging the benefits afforded by the Longshoremen's and Harbor Workers' Compensation Act (LHCA)[3] were available to plaintiffs and this excluded all other benefits.
From a judgment maintaining the exceptions and dismissing their suit, plaintiffs have appealed.
The issue presented by this appeal is whether the survivors of the deceased may elect to pursue the remedies afforded by laws of the State of Louisiana (claim for compensation and a third party negligence action) or whether the benefits available are exclusively those under LHCA.
It is pertinent to compare several provisions of LHCA before and after its amendment in 1972. We quote the definitions of employer and employee and the coverage sections of the act before and after. Before amendment they provided:
"When used in this chapter
* * * * * *
(3) The term `employee' does not include a master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net.
(4) The term `employer' means an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any dry dock.)" 33 U.S.C. § 902.
"(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law. * * *" 33 U.S.C. § 903.
In enacting the amendments quoted below, Congress extended the LHCA benefits to certain classes of maritime workers who performed their duties on land. Thus the terms "employer" and "employee" were expanded as follows:
"When used in this chapter
* * * * * *
(3) The term `employee' means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker, but such term does not include a master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net.

*214 (4) The term `employer' means an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel)." 33 U.S.C. § 902.
At the same time coverage was extended to harbor workers injured in some areas adjacent to and inland of the shoreline in 33 U.S.C. § 903(a):
"Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel). * * *"
Defendants argue the 1972 amendment legislatively overrules the twilight zone doctrine that since 1942 has permitted certain longshoremen and harbor workers to elect whether they would pursue state or federal remedies when injured on the job.
Davis v. Department of Labor and Industries[4] coined the "twilight zone" term in analyzing a factual situation from which it found it "extremely difficult" to determine whether state or federal compensation law should be applied. A structural steel worker, while dismantling a bridge across a navigable river and stowing the steel in a barge, fell in and drowned. The survivors' right to compensation under the state act was upheld, but the court pointed out these plaintiffs could have elected to seek LHCA benefits, because that act adopted "the Jensen line of demarcation."[5]
The post-Davis jurisprudence has expanded LHCA coverage to all injuries incurred in the course of employment over navigable waters [6] even though the worker was performing a nonmaritime function.[7] At the same time it was recognized that many injuries incurred over navigable water were also within the constitutional reach of the states and could be covered by workmen's compensation laws, if work being performed was of local concern.[8]
Thus as the twilight zone was expanded to give more longshoremen and harbor workers the option to pursue state or federal remedies, this quoted limitation of 33 U.S.C. § 903(a) was rendered ineffective:
"Compensation shall be payable under this chapter * * * if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law. * * *" (Emphasis supplied.)
As amended, the coverage section makes no reference to state compensation law. It simply provides benefits are due:
"* * * if the disability or death results from an injury occurring upon *215 the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel). * * *"
Defendants contend this amendment was enacted to demark where federal benefits end and state benefits begin, and to eliminate that class of claims that could previously have been brought in either state or federal tribunals. In extending coverage inland, defendants maintain Congress extended the admiralty jurisdiction of the United States and preempted an area in which state law could no longer effectively operate.
A state does not automatically lose its authority to legislate when Congress extends the federal law into an area formerly regulated exclusively by the state. Federal preemption of a state's legislative power only occurs if there is an irreconcilable conflict between the federal and state statute or if Congress manifests a specific intent to end the state's right to legislate in a given field. In Florida Lime and Avocado Growers, Inc. v. Paul,[9] the Court made these observations on federal preemption:
"* * * The test of whether both federal and state regulations may operate, or the state regulation must give way, is whether both regulations can be enforced without impairing the federal superintendence of the field, not whether they are aimed at similar or different objectives.
"The principle to be derived from our decisions is that federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasonseither that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained. * * *"
The disputed LHCA amendment makes no express declaration that Congress has preempted the exclusive right to those landbased longshoremen and harbor workers to whom federal benefits were granted by its enactment. Nor can we see any conflict between the state and this federal compensation law. We think the amendment was enacted to give certain classes of workers involved in some landbased aspects of activity an option to choose the federal compensation benefits if, in the particular case, they were more favorable.
The legislative history of P.L. 92-576, insofar as it pertains to the extended LHCA coverage, supports this conclusion. It was pointed out in committee there was a disparity in benefits available to certain maritime workers, depending on what side of the water's edge they sustained injury. It was further noted that the compensation rates in many coastal states were substandard. We quote that section of the history pertaining to extending coverage to certain land-based employees adjacent to navigable waters:

"Extension of Coverage to Shoreside Areas
"The present Act, insofar as longshoremen and ship builders and repairmen are concerned, covers only injuries which occur `upon the navigable waters of the United States.' Thus, coverage of the present Act stops at the water's edge; injuries occurring on land are covered by State Workmen's Compensation laws. The result is a disparity in benefits payable for death or disability for the same type of injury depending on which side of the water's edge and in which State the accident occurs.
"To make matters worse, most State Workmen's Compensation laws provide benefits which are inadequate; even the better State laws generally come nowhere close to meeting the National Commission *216 on State Workmen's Compensation Laws recommended standard of a maximum limit on benefits of not less than 200% of statewide average weekly wages. The following are the maximum limits on the compensation payable for permanent total disability in some maritime States:

California _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ $ 70.00
Florida _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ 56.00
Hawaii _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ 112.50
Louisiana _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ 49.00
Maryland _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ 85.68
Massachusetts _ _ _ _ _ _ _ _ _ 1 77.00
New Jersey _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ 101.00
New York _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ 80.00
Oregon _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ 62.50
Pennsylvania _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ 60.00
Texas _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _49.00

1Plus $6 for each dependent.
"Also, under the laws of some states due to exemptions based upon the number of employees hired some workers might be uncovered in the event they are unfortunate victims of an injury.
"It is apparent that if the Federal benefit structure embodied in Committee bill is enacted, there would be a substantial disparity in benefits payable to a permanently disabled longshoreman, depending on which side of the water's edge the accident occurred, if State laws are permitted to continue to apply to injuries occurring on land. It is also to be noted that with the advent of modern cargohandling techniques, such as containerization and the use of LASH-type vessels, more of the longshoreman's work is performed on land than heretofore.
"The Committee believes that the compensation payable to a longshoreman or a ship repairman or builder should not depend on the fortuitous circumstance of whether the injury occurred on land or over water. Accordingly, the bill would amend the Act to provide coverage of longshoremen, harbor workers, ship repairmen, ship builders, shipbreakers, and other employees engaged in maritime employment (excluding masters and members of the crew of a vessel) if the injury occurred either upon the navigable waters of the United States or any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other area adjoining such navigable waters customarily used by an employer in loading, unloading, repairing, or building a vessel.
"The intent of the Committee is to permit a uniform compensation system to apply to employees who would otherwise be covered by this Act for part of their activity. To take a typical example, cargo, whether in break bulk or containerized form, is typically unloaded from the ship and immediately transported to a storage or holding area on the pier, wharf, or terminal adjoining navigable waters. The employees who perform this work would be covered under the bill for injuries sustained by them over the navigable waters or on the adjoining land area. The Committee does not intend to cover employees who are not engaged in loading, unloading, repairing, or building a vessel, just because they are injured in an area adjoining navigable waters used for such activity. Thus, employees whose responsibility is only to pick up stored cargo for further transshipment would not be covered, nor would purely clerical employees whose jobs do not require them to participate in the loading or unloading of cargo. However, checkers, for example, who are directly involved in the loading or unloading functions are covered by the new amendment. Likewise the Committee has no intention of extending coverage under the Act to individuals who are not employed by a person who is an employer, i.e. a person at least some of whose employees are engaged, in whole or in part in some form of maritime employment. Thus, an individual employed by a person none of whose employees work, in whole or in part, on navigable *217 waters, is not covered even if injured on a pier adjoining navigable waters." U.S.Code Cong. & Admin.News 1972, pp. 4698, 4707.
One sentence of this quoted portion of the history is cited by defendants to support their argument Congress preempted the states' right to legislate in land areas included in the 1972 LHCA amendment, viz:
"It is apparent that if the Federal benefit structure embodied in Committee bill is enacted, there would be a substantial disparity in benefits payable to a permanently disabled longshoreman, depending on which side of the water's edge the accident occurred, if State laws are permitted to continue to apply to injuries occurring on land. * * *" (Emphasis supplied.)
At first reading this would seem to support the preemption argument; however, the history of the amendment, when considered as a whole, indicates that the emphasized phrase is an unfortunate choice of words. It is suggested that inserting the word "exclusively" in the phrase "to continue to apply [exclusively] to injuries occurring on land" might better express the thinking of the committee. There is nothing in the legislative history to suggest Congress intended to overrule legislatively that line of cases recognizing the state's right to provide compensation in the twilight zone area or for injuries involving maritime pursuits of local concern.
The omission takes on added significance if we compare the quoted portion of the legislative history with another section dealing with the right of longshoremen to bring third party actions. The amendment eliminated and legislatively repudiated the judicial extension of the warranty of unseaworthiness to longshoremen in third party suits against the vessel, and in so doing, discussed in detail the Supreme Court decisions[10] it intended to overrule.
Therefore, we conclude plaintiffs' right to elect to receive benefits under the Louisiana Workmen's Compensation Act remained unaffected by the 1972 LHCA amendment because the federal legislation did not preempt the state's right to legislate in this area.
This brings us to the primary issue posed by the facts of this case and that is whether the amendment had any impact on plaintiffs' right to bring a third party action *218 against Avondale's executive officers. L.R.S. 23:1101 gives the injured employee or his dependent the right to "obtain damages from or proceed at law against such [a negligent] third person to recover damages for the injury" in addition to the compensation benefits allowed. The third persons have been interpreted to include fellow employees and executive officers.[11]
Under LHCA, however, a third party action against the executive officers of the employer or the negligent coworker is expressly prohibited. 33 U.S.C. § 933(i) provides:
"The right to compensation or benefits under this chapter shall be the exclusive remedy to an employee when he is injured, or to his eligible survivors or legal representatives if he is killed, by the negligence or wrong of any other person or persons in the same employ: Provided, That this provision shall not affect the liability of a person other than an officer or employee of the employer."
Keller v. Dravo Corporation[12] held this provision prevented an injured longshoreman from bringing an action for damages based on negligence against either an officer of the employer corporation or a fellow worker. Plaintiff in that case admitted the statute plainly barred third party suits against executive officers and fellow servants, but unsuccessfully attempted to challenge its constitutionality as a denial of property without due process of law.
In the case before us plaintiffs argue that the option to elect state or federal remedies extends to third party actions as well as compensation claims. We do not agree. The object of Section 933(i), as we view it, is to limit the liability of the officers and other employees of the employer. Thus, by extending LHCA coverage inland, Congress, in many cases, increased the employer's risk of loss in compensation benefits. Bound by its disadvantageous features, the employer concomitantly should reap the benefits, i.e., the limitation of liability found in Section 933(i).
Under federal law, suit may not be brought against officers and fellow workers based on allegations of negligence. Under Louisiana law, it may. Because the two are irreconcilable, the state must yield insofar as there is conflict. We hold that plaintiffs may not validly bring a third party action against the executive officers of Avondale Shipyards, Inc., and therefore we maintain the exception of no right of action. Under the Louisiana Compensation Law, a suit against the employer is likewise invalid and the dismissal of the suit against it on exception is proper.
For the reasons assigned, the judgment appealed from is affirmed, costs to be borne by appellants.
AFFIRMED.
NOTES
[1] Plaintiffs are the major son, Curtis Poche, Jr., and Mrs. Velma Poche, widow of Curtis Poche, Sr., the latter appearing individually and as administratrix of the estates of her minor children, Whitney and Patricia Poche.
[2] Peter Territo, John Chantrey, Edward A. Blanchard, Al Bossier, Edwin Hartzman and Henry Z. Carter are the executive officers cited.
[3] 33 U.S.C. § 901 et seq.
[4] 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942).
[5] Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917), holds that the New York Compensation Act could not constitutionally be applied to an injury sustained on a gangplank between a vessel and a dock. Because it occurred over navigable water, it was held to be exclusively within the federal maritime jurisdiction, although the court acknowledged it would be difficult to draw the line as to where the state could validly legislate. After many employees were deprived of workmen's compensation under the Jensen rationale, the LHCA was enacted in 1927 to afford federal relief where "recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law."
[6] Calbeck v. Travelers Insurance Company, 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962).
[7] Parker v. Motor Boat Sales, Inc., 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184 (1941).
[8] Arp. v. Maryland Casualty Company, 170 So.2d 166 (La.App.4th Cir. 1964).
[9] 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963).
[10] "The Committee also rejected the thesis that a vessel should be liable without regard to its fault for injuries sustained by employees covered under this Act while working on board the vessel. Vessels have been held to what amounts to such absolute liability by decisions of the Supreme Court, commencing with Seas Shipping Co. v. Sieracki, 328 U.S. 85 [66 S.Ct. 872, 90 L.Ed. 1099] (1946) which held that the traditional seamen's remedy based on the breach of the vessel's absolute, nondelegable duty to provide a seaworthy vessel was also available to longshoremen and others who performed work on the vessel which by tradition has been performed by seamen. Under the Sieracki case, vessels are liable, as third parties, for injuries suffered by longshoremen as a result of `unseaworthy' conditions even though the unseaworthiness was caused, created, or brought into play by the stevedore (or an employee of the stevedore) rather than the vessel or any member of its crew. For example, under present law, if a member of a longshore gang spills grease on the deck of a vessel and a longshoreman slips and falls on the grease a few moments later, the vessel is liable to pay damages for the resulting injuries, even though no member of the crew was responsible for creating the unseaworthy condition or was even aware of it. Furthermore, in the example given above, under the Supreme Court's decision in Ryan Stevedoring Co. v. Pan Atlantic S.S. Corp., 350 U.S. 124 [, 76 S.Ct. 232, 100 L.Ed. 133] (1956), the vessel may recover the damages for which it is liable to the injured longshoreman from the stevedore which employed the longshoreman on the theory that the stevedore has breached an express or implied warranty of workmanlike performance to the vessel. The end result is that, despite the provision in the Act which limits an employer's liability to the compensation and medical benefits provided in the Act, a stevedore-employer is indirectly liable for damages to an injured longshoreman who utilizes the technique of suing the vessel under the unseaworthiness doctrine." U.S.Code Cong. & Admin.News 1972, at p. 4702.
[11] Grigg v. Martin, 269 So.2d 331 (La.App.2d Cir. 1972); Jolly v. Travelers Ins. Co., 161 So.2d 354 (La.App.4th Cir. 1964).
[12] 441 F.2d 1239 (1971); Certiorari denied, 404 U.S. 1017, 92 S.Ct. 679, 30 L.Ed.2d 665.