921 So.2d 972 (2005)
Quincy L. ADAMS, Jr., et al.
v.
OWENS-CORNING FIBERGLAS CORPORATION, et al.
No. 2004 CA 1296.
Court of Appeal of Louisiana, First Circuit.
September 23, 2005.
Rehearing Denied November 10, 2005.
*974 J. Burton LeBlanc, IV, Cameron R. Waddell, Brian F. Blackwell, Sandra A. Jelks, Chad Dudley, Jody E. Anderman, LeBlanc & Waddell, LLP, Baton Rouge, for Plaintiff/Appellant Thomas H. Jefferson.
Roland M. Vandenweghe, Jr., Mark J. Spansel, Edwin C. Laizer, Robert Markle, Adams and Reese LLP, New Orleans, for Defendant-Appellee Cooper/T. Smith Stevedoring Company, Inc.
Before: PARRO, KUHN, and WELCH, JJ.
PARRO, J.
Thomas H. Jefferson[1] appeals a judgment in favor of his former employer, Cooper/T. Smith Stevedoring Company, Inc. (Cooper), which sustained Cooper's peremptory exception raising the objection of no cause of action and dismissed Jefferson's *975 claims against it on the basis that his exclusive remedy is provided by the Longshore and Harbor Workers' Compensation Act (LHWCA).[2] We affirm in part, reverse in part, and remand.

FACTUAL AND PROCEDURAL BACKGROUND
This lawsuit, filed by several hundred plaintiffs, claims that, due to the fault of one or more of multiple defendants, each plaintiff suffered illness and disability as a direct result of exposure to asbestos. The only claim against Cooper was brought by one of its former employees, Jefferson, who was diagnosed with asbestosis in 1994 and colon cancer in 1999. He claims that while working for Cooper as a longshoreman on the Mississippi River in 1965 and at various times between 1970 through 1983, his job duties included loading and off-loading of ships in which the cargo often consisted of raw asbestos and/or asbestos-containing materials. Jefferson alleges that Cooper did not provide a safe working environment, equipment, training, or warnings concerning these materials, although it knew or should have known about the health hazards involved in handling them. As a result, he was exposed to asbestos dust and suffered damages.
Cooper filed an exception raising the objection of no cause of action based on the affirmative defense that all of Jefferson's claims against it are barred by the LHWCA, which is the exclusive remedy for longshoremen bringing claims against their employers for work-related injuries or illnesses. Jefferson opposed the motion, arguing that because his exposure to asbestos occurred before the scope of the LHWCA was extended in 1972 to cover land-based work, his tort claims were not barred by its provisions. After a hearing, the district court agreed with Cooper and dismissed Jefferson's claims against it. In the February 26, 2004 judgment, the court further stated that, pursuant to the provisions of LSA-C.C.P. art. 1915, the judgment was designated as final after an express determination that there was no just reason for delay. This appeal followed.

APPLICABLE LAW

No Cause of Action
The purpose of an exception raising the objection of no cause of action is to determine the sufficiency in law of the petition. The exception is triable on the face of the petition. For the purpose of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. City of New Orleans v. Board of Comm'rs of Orleans Levee Dist., 93-0690 (La.7/5/94), 640 So.2d 237, 241; see LSA-C.C.P. arts. 927 and 931. Furthermore, the facts shown in any documents annexed to the petition must also be accepted as true. See LSA-C.C.P. art. 853; Cardinale v. Stanga, 01-1443 (La.App. 1st Cir.9/27/02), 835 So.2d 576, 578. The burden of demonstrating that no cause of action has been stated is on the party filing the exception. Home Distribution, Inc. v. Dollar Amusement, Inc., 98-1692 (La.App. 1st Cir.9/24/99), 754 So.2d 1057, 1060.
In ruling on an exception of no cause of action, the court must determine whether the law affords any relief to the claimant if he proves the factual allegations in the petition and annexed documents at trial. Home Distribution, 754 So.2d at 1060. No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. LSA-C.C.P. art. 931. When a petition is read to determine whether a cause of action has been stated, it must be *976 interpreted, if possible, to maintain the cause of action instead of dismissing the petition. Any reasonable doubt concerning the sufficiency of the petition must be resolved in favor of finding that a cause of action has been stated. Brister v. GEICO Ins., 01-0179 (La.App. 1st Cir.3/28/02), 813 So.2d 614, 617. When an exception of no cause of action is based on an affirmative defense, the exception should not be sustained unless the allegations of the petition exclude every reasonable hypothesis other than the premise upon which the defense is based. West v. Ray, 210 La. 25, 33, 26 So.2d 221, 224 (1946); see also Owens v. Martin, 449 So.2d 448, 452 (La.1984).
The reviewing court conducts a de novo review of a trial court's ruling sustaining an exception of no cause of action, because the exception raises a question of law, and the lower court's decision is based only on the sufficiency of the petition. B & C Elec., Inc. v. East Baton Rouge Parish Sch. Bd., 02-1578 (La.App. 1st Cir.5/9/03), 849 So.2d 616. When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection cannot be so removed, the action shall be dismissed. LSA-C.C.P. art. 934. This is true of any objection raised by the peremptory exception, including no cause of action. Brister, 813 So.2d at 616-17.

Accrual of the cause of action governs applicable law
Under Louisiana law, for a negligence cause of action to accrue, three elements are required: fault, causation, and damages. Owens, 449 So.2d at 450-51. In Cole v. Celotex Corp., 599 So.2d 1058 (La.1992), the Louisiana Supreme Court outlined a framework to assist in determining when a cause of action accrues in long-latency occupational disease cases. Following Cole, the courts ultimately adopted the significant exposure theory to establish when a tort cause of action accrues for physical harm arising from asbestos exposure. See Abadie v. Metropolitan Life Ins. Co., 00-0344 (La. App. 5th Cir.3/28/01), 784 So.2d 46, 64-65, writs denied, 01-1533, 1534, 1543, 1544, 1629, 1853, and 1931 (La.12/14/01), 804 So.2d 642, 643, and 644, cert. denied sub nom. Territo v. Adams, 535 U.S. 1107, 122 S.Ct. 2318, 152 L.Ed.2d 1071 (2002); Austin v. Abney Mills, Inc., 01-1598 (La.9/4/02), 824 So.2d 1137, 1154. Under this theory, the date of disability is not the relevant date to decide the issue of when a tort cause of action accrued in a long-latency occupational disease case in which the individual suffers from the disease. Austin, 824 So.2d at 1143. To establish when the tort cause of action accrued in a long-latency occupational disease case, wherein the plaintiff suffers from disease, the plaintiff must present evidence that the exposures were significant and such exposures later resulted in the manifestation of damages. Austin, 824 So.2d at 1154. "Significant exposure" occurs and the cause of action accrues when asbestos dust has so damaged the body that the fibrogenic effects of its inhalation will progress independently of further exposure. Abadie, 784 So.2d at 64.
Once a party's cause of action accrues, it becomes a vested property right that may not constitutionally be divested. Cole, 599 So.2d at 1063. Statutes enacted after the acquisition of such a vested property right cannot be retroactively applied so as to divest the plaintiff of his vested right in his cause of action, because such a retroactive application would contravene the due process guarantees. Id.; Austin, 824 So.2d at 1145. The law in effect at the time of the tortious exposures applies if *977 the evidence proves that the exposures were significant and resulted in the later manifestation of disease, causing damages to the plaintiff. See Bourgeois v. A.P. Green Industries, 02-0713 (La.App. 5th Cir.2/25/03), 841 So.2d 902, 908-09.
In Johnson v. Ashland Oil, Inc., 96-0323 (La.App. 1st Cir.12/20/96), 684 So.2d 1156, 1158, writ denied, 97-0206 (La.3/14/97), 690 So.2d 37, this court concluded that pre-1975 Louisiana workers' compensation law did not bar a tort claim by the employee's survivors against his employer for the development of mesothelioma, which was not one of the occupational diseases listed in the statute and which was allegedly caused by asbestos, a nonlisted toxin. Similarly, in Thomas v. Armstrong World Indus., Inc., 95-2222 (La. App. 1st Cir.6/28/96), 676 So.2d 1185, writ denied, 96-1965 (La.11/1/96), 681 So.2d 1272, this court determined that although asbestosis was one of the listed occupational diseases in the Louisiana workers' compensation law after 1952, which was when the plaintiff in that case was exposed to asbestos, he had stated a tort cause of action for damages due to lung cancer, which was not one of the listed diseases. In Austin, the supreme court confirmed that where the Louisiana workers' compensation act provided no coverage for an occupational disease, the employee enjoyed no compensating advantage for the surrender of any tort rights he might have; therefore, he was free to proceed against his employer in tort. Austin, 824 So.2d at 1145. Once the employee acquired a right to sue in tort for a non-covered occupational disease, he could not later be divested of that right by subsequent legislative expansion of coverage for that occupational disease. Austin, 824 So.2d at 1145. Similarly, if the employee had an accrued cause of action in tort against executive officers of his employer, that cause of action could not be barred by later statutory amendments to the workers' compensation scheme. Quick v. Murphy Oil Co., 446 So.2d 775, 779 (La.App. 4th Cir.1982), writs denied, 447 So.2d 1074 (La.1984). Nor was such a cause of action barred by the LHWCA. Bourgeois, 841 So.2d at 910-11.

LHWCA
The LHWCA currently provides that compensation is payable upon the disability or death of an employee from an injury occurring upon the navigable waters of the United States, including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel. 33 U.S.C. § 903(a). An "employee" is defined as "any person engaged in maritime employment, including any longshoreman . . . ." 33 U.S.C. § 902(3). Section 905(a) of the LHWCA provides, in pertinent part, "The liability of an employer prescribed in [33 U.S.C. § 904] shall be exclusive and in place of all other liability of such employer to the employee." Bordelon v. Avondale Industries, Inc., 03-228 (La.App. 5th Cir.5/28/03), 846 So.2d 993, 994 n. 2, writ denied, 03-2074 (La.11/7/03), 857 So.2d 497.
However, prior to its amendment in 1972,[3] the LHWCA did not provide coverage to traditional maritime workers who worked landward beyond the shoreline of the navigable waters of the United States. See Abadie, 784 So.2d at 65. Therefore, before that date, the employee whose injuries were suffered beyond navigable waters was limited to whatever benefits might be available to him under state law. Sun Ship, Inc. v. Pennsylvania, 447 U.S. 715, 719, 100 S.Ct. 2432, 2436, 65 L.Ed.2d *978 458 (1980). In Sun Ship, the Supreme Court noted that neither this extension of LHWCA coverage nor the exclusivity provision in Section 905(a) would be construed to exclude remedies offered by other jurisdictions. Sun Ship, 447 U.S. at 722 n. 4, 100 S.Ct. at 2438 n. 4. The goal of the 1972 amendment was to expand the benefit options available to injured longshoremen, "out of solicitude for the workers," rather than leave them floundering on the "horns of a jurisdictional dilemma" that required them to determine which of two compensation systems might have exclusive jurisdiction over their claims. Sun Ship, 447 U.S. at 725-26, 100 S.Ct. at 2439.
This conclusion from the United States Supreme Court echoes the earlier decision of the Louisiana Supreme Court in Poche v. Avondale Shipyards, Inc., 339 So.2d 1212, 1221 (La.1976), in which the court stated, "[I]t is our opinion that the 1972 amendments to the [LHWCA] were intended to provide additional benefits for land-based maritime workers rather than to deprive them of rights and remedies which they already had." Since at the time the cause of action accrued in the Poche case, Louisiana workers' compensation law allowed an employee to bring a negligence suit against third parties, whom the jurisprudence had established included the employee's co-workers and an employer's executive officers, the supreme court found the maritime employees' tort suits against those third parties were not barred by the LHWCA.[4]Poche, 339 So.2d at 1221.

DISCUSSION
This suit presents a challenge on many levels, not the least of which is determining exactly what claims have been made by Jefferson against Cooper, since there are many general allegations that appear to be common to all the plaintiffs against all the defendants, but there are also claims that are specific to certain plaintiffs and/or certain categories of defendants. The general allegations in the original petition are that each defendant is or was engaged in the mining, processing, manufacturing, sale, and/or distribution of asbestos and asbestos-containing products and/or machinery requiring the use of asbestos and/or asbestos-containing products (asbestos materials). The plaintiffs claim they worked with and were exposed to these asbestos materials while working in various shipyards, steel mills, refineries, paper mills, chemical plants, and other facilities in the state of Louisiana. They further claim that in their occupations, they were exposed on numerous occasions to asbestos materials produced or sold by the defendants, and they inhaled great quantities of asbestos fibers. As a result of this exposure to asbestos materials designed, manufactured, distributed, and/or sold by the defendants, they suffered injuries.[5] The plaintiffs further allege that their illnesses and disabilities are a direct and proximate result of the defendants' negligence, because the defendants knew or should have known that the asbestos materials were deleterious to the health and wellbeing of the plaintiffs, but failed to take steps that would have protected them. The acts of alleged negligence include failing to warn of the health hazards associated with exposure to asbestos, failing to provide information concerning safety clothing and protective equipment, failing to provide such clothing and equipment, *979 failing to place warnings on the asbestos materials, failing to adopt and publish safety plans or safe methods of handling and installing asbestos, failing to develop and use substitute materials to eliminate asbestos fibers in the products, failing to properly design and manufacture asbestos materials to enable safe use under reasonably anticipated conditions, failing to test asbestos-containing products before releasing them for consumer use, and failing to recall or remove such products from the stream of commerce in spite of knowing of their unsafe and dangerous nature.[6]
In addition to these general allegations, "Count Two" of the original petition states facts to establish a product liability cause of action; "Count Three" sets out a claim that defendants conspired to cause the plaintiffs' injuries and illnesses by exposing them to asbestos materials and, although they knew of the hazards of such exposure, deliberately withheld or concealed that information from the plaintiffs; "Count Four" states that the willful acts of the defendants constituted intentional wrongful conduct resulting in damage to the plaintiffs; "Count Five" claims that an insurance defendant undertook testing services that were supposed to protect the plaintiffs, but did not conduct those tests properly and did not publish accurate results showing the deleterious health effects of asbestos exposure; and "Count Six" sets out a claim of joint liability for the damage caused by the defendants' combined actions. The employee plaintiffs seek damages for the mental and physical pain, suffering, expenses, loss of income, and other losses they incurred and will incur as a result of asbestos-related lung diseases and other physical conditions and disabilities caused by exposure to asbestos materials. In addition, their spouses and families seek loss of consortium damages. Although Thomas H. Jefferson and Joannie Jefferson are listed among the plaintiffs in the original petition, Cooper is not listed as one of the defendants.[7]
Cooper was eventually named as one of many "employer defendants" in the seventeenth supplemental and amending petition (the 17th petition), against whom the plaintiffs allege "negligent, grossly negligent, wanton, willful and intentional misconduct." The 17th petition claims that while employed by the employer defendants, the plaintiffs were continuously exposed to asbestos and asbestos-containing dust without the provision of appropriate safeguards by these employer defendants. A work history attached to the 17th petition shows Jefferson worked for Cooper as a longshoreman for five months in 1965, from October 1970 to March 1972, and at various times and locations from 1970 through 1983. The plaintiffs generally allege in the 17th petition that the employer defendants undertook the duty to provide their employees with safe places to work, but wantonly and/or negligently and/or *980 willfully and/or intentionally failed to do so. They further claim the premises where the employer defendants sent the plaintiffs to work were unreasonably dangerous due to the presence and use of asbestos materials, causing the plaintiffs to be exposed to airborne asbestos fibers, yet the employer defendants took no precautions to minimize the risk and gave no warnings of the danger. The liability of the defendants was allegedly due to their: failing to provide their employees with a safe work place, safety equipment, other protection from asbestos exposure, personal protective equipment, and work procedures designed to prevent or minimize asbestos exposure; failing to supervise or insure compliance with safety guidelines; failing to use or allowing misuse of equipment within their control that might have minimized exposure; failing to disclose, warn, or reveal critical medical and safety information regarding asbestos hazards in general and at the work sites; willfully concealing such information; failing to remove asbestos hazards from the work places; failing to monitor the work areas for compliance with safety regulations; failing to provide a suitable means to eliminate asbestos in the air; failing to properly perform work involving installation, removal, maintenance, and/or distribution of asbestos at the work sites; failing to comply with applicable state and federal regulations regarding workplace exposure to asbestos; and failing to properly perform or direct removal and abatement of asbestos at work sites.[8]
Jefferson's specific allegations against the defendants are described in the 17th petition as the following:
10PP. During Plaintiff's term of employment as a longshoreman, Plaintiff worked on board various ships at the locations and on the dates outlined in Exhibit "A". His duties included, but were not limited to, loading and off-loading of cargo, which on many occasions included raw asbestos and/or asbestos-containing materials, and which were carried out in the same general vicinity where insulation contractors and suppliers were engaged in the removal and installation of asbestos-containing products. His duties also included, but were not limited to, recondition cargo, a job which required him to repair torn boxes and sacks of raw asbestos fibers shipped by asbestos fiber suppliers, and manufacturer/sellers. These activities resulted in Plaintiff's occupational exposure to asbestos and asbestos-containing products designed, mined, manufactured, sold, distributed, supplied and/or maintained on various premises by the defendants.
The 17th petition also details Jefferson's conspiracy claims against certain of the defendants; Cooper is not included in these claims.
However, a negligence claim against Cooper and its executive officers is separately set out.[9] In it, Jefferson states that at various times between 1965 to 1985, he was required to transport asbestos and asbestos-containing products from various facilities owned and operated by Cooper. He claims that ultra-hazardous material was transported, stored, used, and handled by Cooper in bags of raw asbestos or as manufactured products and was mishandled, used, or damaged in such a way as to cause asbestos dust to be released in such heavy quantities as to be hazardous to Jefferson, without any fault or knowledge on his part. The transport of these ultra-hazardous materials allegedly involved *981 using slings to unload cargo from vessels onto tractors, moving the materials to landside warehouses, and unloading them for storage in those facilities. Jefferson claims that Cooper and its executive officers were liable to him for their negligence in performing a number of duties and responsibilities related to providing a safe working environment, providing adequate oversight and supervision, providing proper training and equipment, providing adequate warnings of the health hazards of asbestos exposure, and complying with applicable state and federal regulations designed to minimize exposure to asbestos. Jefferson further asserts that Cooper and its executive officers knew of the dustladen atmosphere in which he was required to work and receive cargo, which was damaging and dangerous to him, and each knew or should have known of the dangers to his health posed by working in an atmosphere polluted with asbestos dust without proper protection or warnings. He also states these defendants knew or should have known that respiratory illnesses, such as asbestosis, could have been avoided by the use of adequate ventilation, warnings, packaging, and safety equipment. Jefferson lists many acts of alleged negligence by Cooper and its executive officers, asserting that these were a substantial factor and contributed in causing him to contract asbestos-related diseases.
Having identified these many allegations against Cooper and its executive officers, the second challenge for this court is to determine whether the petitions sufficiently stated any cause of action in tort that accrued at a time when neither Louisiana workers' compensation law nor the LHWCA barred Jefferson's recovery from his employer for the acts alleged. Under a duty-risk analysis, Jefferson has alleged that Cooper and its executive officers had a duty not to expose him to products that they knew or should have known were unreasonably dangerous because of their asbestos content. For purposes of the exception of no cause of action, the petitions alleged that Cooper breached that duty, and that the conduct constituting a breach of duty was a cause-in-fact of damages sustained by Jefferson. See Bourgeois v. A.P. Green Industries, Inc., 97-3188 (La.7/8/98), 716 So.2d 355, 362 (Lemmon, J., concurring). Thus, unless an affirmative defense bars the claim, it seems clear that a tort cause of action was alleged.
What is less clear, but does emerge from the many factual allegations made in the petitions, is that Jefferson alleged a tort cause or causes of action against Cooper and its executive officers that accrued before 1972, and thus was not subject to coverage under the LHWCA. Jefferson stated he was continuously exposed to asbestos and asbestos-containing dust without the provision of appropriate safeguards while in Cooper's employ and that this exposure resulted in his later illnesses. Some of this employment and some of this "continuous exposure" occurred during 1965 and from October 1970 to March 1972. These statements of fact allege the elements of a "significant exposure" claim during those time periods, such that if Jefferson can show that those exposures were significant and later resulted in the manifestation of damages, his cause of action accrued at that time and is governed by then-applicable law. See Austin, 824 So.2d 1137. Because a portion of his employment with Cooper pre-dated the 1972 expansion of the LHWCA to longshoremen whose work occurred on land, Jefferson was not covered by its provisions for all of the times during which such "continuous exposure" allegedly occurred. Since he was not covered by the LHWCA before 1972, he could bring an accrued cause of action under then-applicable Louisiana law. See Poche, 339 So.2d 1212, and Sun *982 Ship, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458.[10]
Jefferson suffers from asbestosis and colon cancer, both of which the petitions claim were attributable to the asbestos exposure. At the time these exposures allegedly occurred, Louisiana workers' compensation law listed asbestosis as one of the covered occupational diseases. Therefore, his claim against his employer for damages resulting from asbestosis was barred by the exclusivity provisions of Louisiana's workers' compensation law. To that extent, the district court was correct in holding that Jefferson had no tort cause of action against Cooper for his asbestosis-related damages.[11] However, at the time his exposures allegedly occurred, Louisiana's workers' compensation law did not list cancer and did not list other diseases caused by exposure to asbestos. Therefore, his tort claim against Cooper for significant exposure to asbestos allegedly resulting in colon cancer is not barred by the applicable provisions of Louisiana's workers' compensation law. See Thomas, 676 So.2d 1185, and Johnson, 684 So.2d 1156.[12]
We reject Cooper's argument asserting that the jurisprudence supports only the proposition that there is concurrent jurisdiction between state and federal workers' compensation systems, such that the employee's choice is between compensation remedies only, and stating that none of the cases allows a tort suit against an employer. On the contrary, depending on when the cause of action accrued, the nature of the disease, and the then-applicable law, that is precisely what the Louisiana cases have allowed. See Austin, 824 So.2d 1137 (employer not entitled to summary judgment on employee's tort claim for mesothelioma due to pre-1975 exposure to asbestos at work); Thomas, 676 So.2d 1185 (recognizing tort cause of action against employer for lung cancer due to pre-1975 asbestos exposure at work); Johnson, 684 So.2d 1156 (recognizing tort cause of action against employer for mesothelioma due to pre-1975 asbestos exposure at work); Bourgeois, 841 So.2d 902 (employees with asbestosis may have cause of action for non-intentional tort against employer for asbestos-related medical treatment and monitoring if exposure occurred before 1952).
We conclude, therefore, that the allegations of Jefferson's petitions do not exclude every reasonable hypothesis other than the *983 premise upon which Cooper based its affirmative defense to the cause of action, namely, that the LHWCA bars all of Jefferson's claims against it. See Owens, 449 So.2d 448. Accordingly, the trial court erred in sustaining the exception of no cause of action and dismissing all of Jefferson's claims against Cooper.[13]

CONCLUSION
For the foregoing reasons, we affirm the judgment, insofar as it sustained Cooper's exception raising the objection of no cause of action and dismissed Jefferson's tort claims against Cooper arising out of the occupational disease of asbestosis. In all other respects, we reverse the judgment and remand this case to the trial court for further proceedings. Costs of this appeal are assessed equally to Jefferson and Cooper.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] Jefferson's wife, Joannie Jefferson, is also a plaintiff in the case, claiming loss of services, consortium, and financial support; the expenses of current and future medical and nursing attention; and mental anguish attributable to her husband's asbestos-related injuries and disabilities. The Jeffersons' tort claims against Cooper are the only claims dismissed by the judgment.
[2] 33 U.S.C. § 901, et seq.
[3] The landward extension of coverage under the LHWCA was included in Pub.L. No. 92-576, 86 Stat. 1251, amending 33 U.S.C. § 903(a).
[4] This interpretation was legislatively overruled by 1976 La. Acts, No. 147, § 1, to prohibit suits against executive officers and fellow employees. See Poche, 339 So.2d at 1221 n. 7.
[5] These allegations are in the original petition, paragraphs four and five.
[6] These claims are in paragraph seven of the original petition as part of "Count One."
[7] The petition was supplemented and amended numerous times to substitute plaintiffs for those who had died after suit was filed and to assert new wrongful death and survivorship claims. A sixteenth supplemental and amending petition (the 16th petition) includes a more detailed work history and adds numerous defendants in various categories. Additional manufacturing defendants are named and, in addition to the previous negligence claims, strict liability claims are set out against them for providing defective products that caused damage to the plaintiffs. A number of contractor defendants are also added and negligence and strict liability claims are set out against them. Another group of defendants described as "premise defendants" is named, and a list of certain plaintiffs who assert premise liability claims against them for negligence and strict liability is attached. Cooper is not included as an additional defendant for any of the claims in the 16th petition.
[8] These general allegations are in paragraphs 10R through 10X of the 17th petition.
[9] These detailed allegations are made in paragraphs 10MMMM through 10RRRR of the 17th petition.
[10] Cases cited by Cooper for the proposition that the "date of manifestation" governs which version of the LHWCA applies are not controlling; those suits were filed in federal court under the LHWCA and/or general maritime law and merely recognize that the federal court is not bound by a state's interpretation of a federal statute. See Castorina v. Lykes Bros. S.S. Co. Inc., 758 F.2d 1025 (5th Cir.1985), cert. denied, 474 U.S. 846, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985); Grantham v. Avondale Indus., Inc., 964 F.2d 471 (5th Cir. 1992). All of the other federal cases cited by Cooper are similarly distinguishable from this case, in which a Louisiana court is asked to apply Louisiana law to Louisiana causes of action for damages that were allegedly suffered before the date the LHWCA became applicable to this longshoreman's claims.
[11] We notice sua sponte Jefferson's failure to disclose a tort cause of action against Cooper arising out of his occupational disease of asbestosis. See LSA-C.C.P. art. 927(B).
[12] In its exception, Cooper did not raise any defense concerning claims against its executive officers, so the district court's judgment did not adjudicate any such claims. We note that before 1976, Louisiana's workers' compensation law did not bar an employee's tort claims against his employer's executive officers, who were considered third parties. See Quick, 446 So.2d 775 and Abadie, 784 So.2d 46. For a cause of action accruing before 1972, such claims were also not barred by the exclusivity provisions of the LHWCA. See Bourgeois, 841 So.2d 902.
[13] The fact that certain claims have been specifically discussed in this opinion should not be read to foreclose the possibility that other causes of action against Cooper, such as intentional torts, may have been stated and may also remain justiciable in this litigation. See, e.g., Robinson v. North American Salt Co., 02-1869 (La.App. 1st Cir.6/27/03), 865 So.2d 98, writ denied, 03-2581 (La. 11/26/03), 860 So.2d 1139; Bourgeois, 841 So.2d at 910; Ross v. Conoco, Inc., 02-0299 (La.10/15/02), 828 So.2d 546.