PETTIGREW, J.
*226 In this inverse condemnation suit, the plaintiffs appeal a judgment sustaining the defendant's exception raising the objection of no cause of action and dismissing plaintiffs' petition with prejudice based on federal preemption. For the reasons set forth herein, we reverse and remand for further proceedings.
FACTS AND PROCEDURAL HISTORY
Two state agencies jointly regulate the waterways of the Sabine River, which meanders between Louisiana and Texas: the Sabine River Authority, State of Louisiana ("SRA-L") and the Sabine River Authority, State of Texas ("SRA-T"). The SRA-L and the SRA-T applied for and received a license from the Federal Energy Regulatory Commission ("FERC")[1] for the construction, operation, and maintenance of a large reservoir, the Toledo Bend Dam,[2] a spillway, and a hydroelectric plant. In accordance with the provisions of the Federal Power Act ("FPA"), 16 USC § 791a - 828c, FERC may issue licenses for the construction, operation, and maintenance of dams, water conduits, reservoirs, power houses, transmission lines, or other project works necessary or convenient for the development and improvement of navigation and for the development, transmission, and utilization of power across, along, from, or in any of the streams or other bodies of water over which Congress has jurisdiction. 16 USC 797(e).
Plaintiffs are all owners of property located in Louisiana in Vernon Parish or Beauregard Parish near the Sabine River, downstream from the Toledo Bend Dam. Defendant, the SRA-L, is an agency and instrumentality of the State of Louisiana. La. R.S. 38:2324(A). In March 2017, plaintiffs filed a Petition for Compensation for Taking of Property, in which they alleged that the erection of the Toledo Bend Dam by the SRA-L caused significant changes to the Sabine River, downstream from the dam, and that those changes to the river increased the risk of flooding in the property near the Sabine River. Plaintiffs alleged that the changes to the river caused catastrophic flooding in the watershed below the Toledo Bend Dam on March 10, 2016, including plaintiffs' properties, and that their properties will continue to flood in the future due to the changes to the river. Plaintiffs contend that the SRA-L's actions causing changes to the river and the resultant flooding constituted a taking of their property without formal expropriation proceedings and without just compensation, in violation of Article I, § 4 of the Louisiana Constitution.
On April 24, 2017, the SRA-L filed a Notice of Removal to the United States District Court for the Middle District of Louisiana, alleging federal question jurisdiction under 28 U.S.C. § 1331[3] and 16 U.S.C. § 825p[4] . Thereafter, the SRA-L
*227 filed a motion to dismiss the plaintiffs' petition, and the plaintiffs filed a motion to remand the matter to the state court. The United States District Court concluded that federal jurisdiction did not exist in this case under either § 1331 or § 825p and remanded the matter to the state court. The United States District Court also denied the SRA-L's Motion to Dismiss as moot.
Following remand, the SRA-L filed a peremptory exception raising the objections of no cause of action and nonjoinder of a party. After a hearing, the trial court concluded that plaintiffs' suit is preempted under federal law and granted the SRA-L's exception of no cause of action. Because the court dismissed plaintiffs' suit with prejudice for failure to state a cause of action, the exception of nonjoinder was denied as moot. Plaintiffs appealed.
DISCUSSION
The purpose of an exception raising the objection of no cause of action is to determine the sufficiency in law of the petition. The exception is triable on the face of the petition. For the purpose of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. City of New Orleans v. Board of Commissioners of Orleans Levee District, 93-0690 (La. 7/5/94), 640 So.2d 237, 241 ; see La. C.C.P. arts. 927 and 931. Furthermore, the facts shown in any documents annexed to the petition must also be accepted as true. See La. C.C.P. art. 853 ; Cardinale v. Stanga, 01-1443 (La.App. 1 Cir. 9/27/02), 835 So.2d 576, 578. The burden of demonstrating that no cause of action has been stated is on the exceptor. Home Distribution, Inc. v. Dollar Amusement, Inc., 98-1692, p. 5 (La.App. 1 Cir. 9/24/99), 754 So.2d 1057, 1060.
In ruling on an exception of no cause of action, the trial court must determine whether the law affords any relief to the claimant if he proves the factual allegations in the petition and annexed documents at trial. Adams v. Owens-Corning Fiberglas Corp., 04-1296, p. 3 (La.App. 1 Cir. 9/23/05), 921 So.2d 972, 975, writ denied, 05-2501 (La. 4/17/06), 926 So.2d 514. No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. La. C.C.P. art. 931. When a petition is read to determine whether a cause of action has been stated, it must be interpreted, if possible, to maintain the cause of action instead of dismissing the petition. Any reasonable doubt concerning the sufficiency of the petition must be resolved in favor of finding that a cause of action has been stated. Brister v. GEICO Ins., 01-0179, p. 6 (La.App. 1 Cir. 3/28/02), 813 So.2d 614, 617. When an exception of no cause of action is based on an affirmative defense, such as federal preemption, the exception should not be sustained unless the allegations of the petition exclude every reasonable hypothesis other than the premise upon which the defense is based. Adams, 04-1296 at pp. 3-4, 921 So.2d at 976 ; Fisher v. Halliburton, 667 F.3d 602, 609 (5th Cir. 2012), cert. denied, 568 U.S. 941, 133 S.Ct. 427, 184 L.Ed.2d 258 (2012).
The reviewing court conducts a de novo review of a trial court's ruling sustaining an objection raising the exception of no cause of action, because the exception raises a question of law, and the lower court's decision is based only on the sufficiency of the petition. Adams, 04-1296 at p. 4, 921 So.2d at 976.
Article I, § 4 of the Louisiana Constitution provides that property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid *228 to the owner. La. Const. art. I, § 4 (B)(1). The procedural remedy for a property owner seeking compensation for land already taken or damaged against a governmental or private entity having the powers of eminent domain where no expropriation has commenced is through an action for inverse condemnation. State Through Dept. of Transp. & Development v. Chambers Inv. Co., Inc., 595 So.2d 598, 602 (La. 1992). The action for inverse condemnation is available in all cases where there has been a taking or damaging of property where just compensation has not been paid, without regard to whether the property is corporeal or incorporeal. Id. To establish a claim for inverse condemnation, a party must show that: (1) a recognized species of property right has been affected; (2) the property has been taken or damaged in a constitutional sense; and (3) the taking or damaging was for a public purpose under La. Const. art. I, § 4. 1900 Highway 190, L.L.C. v. City of Slidell, 15-1755, p. 6 (La.App. 1 Cir. 6/3/16), 196 So.3d 693, 698.
The well-pleaded facts of the plaintiffs' petition seeking just compensation for the inverse condemnation of their property under La. Const. Art. I, § 4 and La. R.S. 13:5111[5] are as follows: the SRA-L's construction of the Toledo Bend Dam caused significant changes to the Sabine River, downstream from the dam, which changes caused an increased risk of flooding in the property near the river. The changes to the river resulting from the erection of the dam caused catastrophic flash flooding in the watershed below the Toledo Bend Dam on March 10, 2016, including the property belonging to the plaintiffs. The Toledo Bend Dam was constructed for a public purpose, including providing recreation, irrigation, and flood control for the area. The modification of the watershed so as to cause flooding constituted a taking, in a constitutional sense, of plaintiffs' property by causing increased flooding in the past, which will continue to occur in the future, preventing the plaintiffs from using their properties to their highest and best use and diminishing the value of the properties. No compensation was ever paid for the taking.
The SRA-L's exception argued that plaintiffs' petition failed to state a cause of action because their state law claim for inverse condemnation is preempted by the FPA, and is otherwise an impermissible collateral attack on the final and unappealable licensing orders issued by FERC. In concluding that plaintiffs' petition failed to state a cause of action, the trial court reasoned that "everything concerned with the causation and liability associated with this ["]taking["] falls within federally-perempted [sic] matters."
On appeal, the plaintiffs argue that the trial court erred in concluding that their claim was federally preempted "after the federal court specifically found that there was no federal question presented by this case," and remanded the matter to state court. However, even where a suit is remanded to state court for lack of federal subject matter jurisdiction, the state law claim may nevertheless be preempted by federal law. See Giles v. NYLCare Health Plans, Inc., 172 F.3d 332, 337 (5th Cir. 1999). The presence of conflict preemption does not establish federal question jurisdiction. Rather than transmogrifying a state cause of action into a federal one-as occurs with complete preemption-conflict preemption serves as a defense to a state action. In such a case, the federal court, being without removal jurisdiction, cannot resolve the dispute regarding preemption;
*229 it lacks the power to do anything other than remand to the state court where the preemption issue can be addressed and resolved. Id. In this case, the United States District Court remanded plaintiffs' suit to the state court due to a lack of federal question jurisdiction, which prevented the United States District Court from determining the issue of preemption. This does not equate to a finding that the claim is not preempted. Thus, the issue before us is simply whether the plaintiffs' state law claim for the inverse condemnation of their property by the SRA-L is preempted by federal law.
Federal preemption is based on the Supremacy Clause, which provides that federal law shall be the supreme Law of the Land. U.S. Const. art. VI, cl. 2. Federal preemption fundamentally is a question of congressional intent. English v. General Electric Co., 496 U.S. 72, 78-79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990). There are three types of preemption: express preemption, field preemption, and conflict preemption. Kurns v. R.R. Friction Products Corp., 565 U.S. 625, 630-31, 132 S.Ct. 1261, 1265-66, 182 L.Ed.2d 116 (2012). Express preemption occurs when Congress, in enacting a federal statute, expresses a clear intent to preempt state law. Louisiana Public Service Commission v. Federal Communications Commission, 476 U.S. 355, 368-69, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986). Field preemption occurs when the intent to displace state law altogether can be inferred from a framework of regulation so pervasive that Congress has left no room for the States to supplement it or where there is a federal interest so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. Simmons v. Sabine River Authority of Louisiana, 732 F.3d 469, 473-74 (5th Cir. 2013), cert. denied, --- U.S. ----, 134 S.Ct. 1876, 188 L.Ed.2d 912 (2014). Conflict preemption occurs where compliance with both federal and state laws is a physical impossibility, and in those instances where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Id. There is a strong presumption against federal preemption. Simmons v. Sabine River Authority of Louisiana, 11-1146, p. 5 (La.App. 3 Cir. 8/15/12), 97 So.3d 1177, 1179, writ denied, 2012-2043 (La. 11/16/12), 102 So.3d 40.
Although the FPA reveals congressional intent for a broad federal role in the development and licensing of hydroelectric power, Congress carefully preserved the separate interests of the states throughout the Act, without setting up a divided authority over any one subject. Simmons, 732 F.3d at 474. Under this dual system of control, the states and FERC each have final authority over their own subject matter, and the duality does not require that they share in the final decision of the same issue. South Carolina Public Service Authority v. F.E.R.C., 850 F.2d 788, 796 (D.C. Cir. 1988).
Although a licensee, such as the SRA-L, is required by 16 U.S.C. § 803(c) to conform to FERC rules and regulations for the protection of life, health, and property; § 803(c) also provides that the licensee "shall be liable for all damages occasioned to the property of others by the construction, maintenance, or operations of the project ... constructed under the license, and in no event shall the United States be liable therefor." This provision does not create a federal right of action; rather, it preserves state law claims against licensees. Simmons, 732 F.3d at 474.
While liability for property damage caused by FERC licensees is determined *230 by reference to state law, this preservation of state law claims cannot be interpreted so broadly as to supplant FERC's exclusive control of licenses. State law cannot be employed in a collateral attack on a FERC license. Simmons, 732 F.3d at 475-77. In Simmons, property owners sued the SRA-L for property damage after the opening of the Toledo Bend Dam, in accordance with the FERC license, resulted in flood damage to their property. The Simmons plaintiffs asserted various theories of liability under state law, including trespass, negligence, and unconstitutional taking, and sought damages as well as injunctive relief. The United States Fifth Circuit affirmed the district court's dismissal of the Simmons plaintiffs' state law claims, finding that they infringed on FERC's operational control by attempting to impose liability on the SRA-L for acting in compliance with the FERC license, and thus are conflict preempted. Id. The court in Simmons noted that the Supreme Court has recognized that claims for damages can serve the same effect as regulations, since the obligation to pay compensation can be, and is indeed designed to be, a potent method of governing conduct and controlling policy. Simmons, 732 F.3d at 477, quoting Kurns, 132 S.Ct. at 1269. Because operators typically avoid acting in a manner that will expose them to liability, state law claims for damages arising out of the operation of a FERC-licensed dam have just as much potential to change the manner in which a dam is operated as do claims for injunctive relief. Thus, where a property damage claim based in state law alleges damage as a result of the licensee "negligently" operating in compliance with a FERC license, the state property damage claim is preempted, because FERC (not state tort law) must set the appropriate duty of care for licensees. Simmons, 732 F.3d at 476-77 ; 16 U.S.C. § 803(c) (requiring licensees to conform to FERC's rules and regulations). Applying state tort law to set the duty of care for the operation of FERC-licensed projects would stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the FPA. Simmons, 732 F.3d at 477.
While state law property damage claims are conflict preempted where they are used as a collateral attack on the FERC license or stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the FPA, not all state property damage claims are necessarily preempted by the FPA. For example, the United States Fifth Circuit recognized in dicta in Simmons that certain state law property damage claims would not be preempted because they would not conflict with FERC's operational control, such as claims alleging negligence by a licensee for failure to conform to FERC's guidelines.[6] Simmons, 732 F.3d at 477, n. 9. See also Bonin v. Sabine River Authority of Texas, 2018 WL1190234, *2 (E.D. Tex. 2018).
The plaintiffs' petition does not allege negligence by the SRA-L in constructing, operating, or maintaining the Toledo Bend Dam, nor does it seek injunctive relief to effect change in the SRA-L's operation of the dam under the license. The petition *231 merely alleges that the construction of the Toledo Bend Dam caused significant changes to the Sabine River downstream from the dam, which increased the risk of flooding on plaintiffs' properties, resulting in a taking without just compensation. Section 803(c) specifically preserves such state law claims. Assuming plaintiffs are able to prove all of the elements of their inverse condemnation claim and receive compensation for the taking of their property under the Louisiana Constitution and La. R.S. 13:5111, we cannot see how this would interfere with FERC's operational control or stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the FPA.
Although the SRA-L argues that in order for plaintiffs to prevail on their inverse condemnation claim, the trial court would have to disregard FERC's determination that the project did not result in an increased risk of flooding downstream; we are limited when reviewing an objection of no cause of action to the well-pleaded facts of the petition (and any documents annexed thereto), which must be accepted as true. City of New Orleans, 93-0690 at p. 2, 640 So.2d at 241. Accepting the allegations of the plaintiffs' petition as true, and in light of the strong presumption against federal preemption, we cannot say that the SRA-L carried its burden of proving that plaintiffs' petition fails to state a cause of action.
CONCLUSION
For the reasons set forth herein, the judgment of the trial court sustaining the Sabine River Authority, State of Louisiana's exception raising the objection of no cause of action and dismissing plaintiffs' petition with prejudice is reversed. Costs of this appeal, in the amount of $1,165.50, are assessed to defendant, the Sabine River Authority, State of Louisiana.
REVERSED.

FERC was formerly known as the Federal Power Commission.

The Toledo Bend Dam spans the Louisiana/Texas state line and is located in the southern part of the reservoir.

28 U.S.C. § 1331 provides that the District Courts of the United States shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

16 U.S.C. § 825p provides that the District Courts of the United States shall have exclusive jurisdiction of violations of the Federal Power Act, or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder.

Louisiana Revised Statutes 13:5111 provides, in part, for the award of reasonable attorney fees to a successful plaintiff in an inverse condemnation proceeding.

Although the Simmons decision focused on the plaintiffs' negligence claims, it also affirmed, without much discussion, the lower court's dismissal of the plaintiffs' other state law claims, including claims for unconstitutional taking and damage of property without just compensation. This seems to be at odds with the court's statement that "[w]e do not hold that all state property damage claims are preempted by the FPA," such that state law claims which do not conflict with FERC's operational control are not preempted. Simmons, 732 F.3d at 477, n. 9.